IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TERRENCE BROWNLEE,

        Plaintiff,                        No. CIV S-02-0214 MCE GGH P

    vs.

MURPHY, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Pending before the court is defendants' 10/09/07, motion for summary judgment, following reversal and remand of this matter, to which motion plaintiff filed opposition.

        As this court has previously noted:

> Judgment for defendants was entered in this prisoner civil rights action, pursuant to 42 U.S.C. § 1983, on March 31, 2006. Plaintiff appealed and, on June 4, 2007, this case was reversed: 1) as to the grant of summary judgment for the defendant prison guards on plaintiff's Eighth Amendment excessive force claim;[1] and 2) as to the dismissal of plaintiff's due process claim with regard to subsequent disciplinary action.

---

[1] As the Eighth Amendment claim for inadequate medical care is not addressed in the mandate and was evidently not the subject of the appeal, entry of summary judgment for defendants as to that claim remains undisturbed.

1

> With respect to the excessive force claim, the Ninth Circuit having found that the district court should not have granted summary judgment on the first prong of <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), this matter has been remanded:
>
>> 1) to determine whether, under Brownlee's description of the facts, the guards are eligible for qualified immunity under <u>Saucier's</u> second prong, and
>> 2) if they are not so eligible, to resolve this genuine issue of material fact.

Order, filed on 6/21/07, pp. 1-2, and Ninth Circuit Opinion, filed 5/08/07,[2] pp. 2-3. The legal standard for summary judgment having been previously set forth in this matter, the court incorporates it herewith by reference. See Findings and Recommendations, filed on 2/01/06, pp. 7-9, adopted by Order, filed on 3/31/06.

<u>Excessive Force</u>

The facts of plaintiff's Eighth Amendment excessive force allegations in his complaint, for which plaintiff seeks money damages only, including compensatory and punitive, as previously set forth by the court are:

> Plaintiff alleges that on January 18, 2001, he was subjected to excessive force in violation of the Eighth Amendment when defendants Murphy, Snyder, Lytle and Prado, "rushed" him; these defendants comprised several of a number of correctional staff "involved in a confrontation with other inmates," occurring a few minutes prior to the time plaintiff was "assaulted." Complaint (cmpl.), pp. 8-10.[3] Plaintiff had been using the phone and was not involved in the immediately preceding altercation. Cmpl., p. 11. Plaintiff states that he was ordered back into another section by defendant Snyder, but that the door would not open because some 40 inmates were trying to get out. Cmpl., p. 9. Plaintiff, allegedly having witnessed two inmates being beaten by staff, avers that he told defendant Snyder that what was happening was wrong, after which defendant Murphy purportedly ordered that plaintiff be cuffed and taken, along with others, "to the hole." <u>Id.</u> It was then that plaintiff claims that defendants Murphy, Snyder, Lytle and Prado, as well as others unnamed, converged on plaintiff with

---

[2] The opinion was filed in this court on June 4, 2007.

[3] The court is using the page numbering inserted by plaintiff, beginning with the form complaint and continuing onto attached pages.

> plaintiff's hands being pulled behind him by defendants Snyder and Prado and with his right leg pulled up behind him "in the air as far as Sergeant Murphy and Sergeant Lytle could push it." Cmpl., pp. 9-10. Plaintiff claims that his back began to hurt at that point, but nothing was done for him by an unnamed M.T.A., brought to plaintiff by a non-defendant officer, on that occasion. Cmpl., p. 10.
>
> Plaintiff states at his "C.D.C. 114D" (or C.D.C. 115 rule violation) disciplinary hearing, held on January 25, 2001, arising from the subject incident, that he had told staff that they were "doing the wrong" [sic] to the two inmates allegedly being beaten on that occasion. Id.

Findings and Recommendations, filed on 2/01/06, pp. 2-3. Plaintiff claims to have suffered and that he continues to endure intense pain from the injury to his back which has not been adequately treated. Findings and Recommendations, filed on 1/01/06, p. 3; Complaint, pp. 10-12. As plaintiff's claim for inadequate medical care having disposed of previously, the court only notes this as it relates to plaintiff's claim of injury as a result of the actions of defendants Murphy, Snyder, Lytle and Prado. Plaintiff seeks relief in the form of money damages only, including compensatory and punitive.

Defendants Murphy, Lytle, Snyder and Prado move for summary judgment on the grounds that they "are entitled to qualified immunity because officers in their position would have reasonably believed their conduct was lawful." Motion for Summary Judgment (MSJ2), pp. 1-2; see defendant's undisputed fact no. 15.

*Qualified Immunity*

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established constitutional or statutory rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1987). In analyzing whether a particular official is entitled to qualified immunity, the court addresses two questions. First, the court considers whether the facts alleged show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2155 (2001). Second, and only if a constitutional right was violated, the court considers

3

whether the right was clearly established such that a reasonable officer would believe that the alleged conduct was unlawful. Id. at 202, 121 S. Ct. at 2156. "The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987).

This court need not revisit the question of whether the facts alleged show that the officer's conduct violated a constitutional right, that having been established. That question has been decided in favor of plaintiff. The only question on this issue before the undersigned is whether or not, under the second prong of Saucier, in light of *plaintiff's* version of the facts, pursuant to the Ninth Circuit mandate, defendants could be entitled to qualified immunity. The court need not set forth extensively facts of this case that are well-known to both parties. Suffice it to say that it has been previously established that on 1/18/01, following a contraband search in the C-Facility-8 block housing unit of California State Prison- Sacramento by Correctional Officers Prado and Snyder and Correctional Sergeants Murphy and Lytle, two inmates were brought to the rotunda area for a counseling session with defendants Murphy and Lytle; after the encounter became violent, the inmates were taken to the ground, handcuffed and escorted out of C-facility. Plaintiff was on the phone when the inmates were brought to the rotunda to be counseled. See Findings and Recommendations, filed on 2/01/06, pp. 9-11, adopted by Order, filed on 3/31/06.

Of the putative undisputed facts set forth by defendants, plaintiff does not dispute the facts as set forth above (defendants' undisputed facts (DUF) 1 & 5); nor does he dispute DUF 6, describing the rotunda as a passageway connecting the housing section and leading to the outside yard and that the phone was located in the middle of the rotunda. Plaintiff's response to DUF. Plaintiff has conceded that he said that what plaintiff had seen staff do to the two inmates was "wrong." Plaintiff also does not dispute DUF 13, that after the incident with the two inmates but before they were taken out of the rotunda, there were a number of inmates gathered at a window, "shouting and yelling."

4

1    According to plaintiff, who was not involved in the incident with the two inmates, he was ordered to C-section, 8-block by defendant Snyder, but the control officer would not open the door to allow plaintiff's exit from the rotunda because some 40 prisoners had seen the melée and were agitated. In support of plaintiff's contention that the control officer would not open the door, plaintiff provides defendant Snyder's supplemental responses to plaintiff's request for admissions (RFA), wherein defendant Snyder implicitly concedes that the control officer had not opened the door but frames the admission as plaintiff having refused to return to the section upon being ordered to do so and stating that "[t]he control officer would not have opened the door until Brownlee and I arrived at the door, so I could prevent any inmates in the section from entering the rotunda." Plaintiff's 10/22/07 affidavit in Opp., attaching defendant Snyder's supplemental responses to RFA No. 3. Defendant Murphy ordered that plaintiff be handcuffed and that order triggered the convergence upon plaintiff of the defendants rushing him to the wall with his hands being pulled behind him by defendants Snyder and Prado, and his right leg being pulled up behind as far as defendants Murphy and Lytle could push it. Opposition (Opp.), p. 4, citing the declarations by both defendants Murphy and Lytle to the first motion for summary judgment, which he includes as exhibits to his 10/22/07 affidavit in opposition. In those declarations, defendants Murphy and Lytle state that Murphy gave plaintiff the "cuff up" order, on hearing plaintiff say that there was something "wrong" with the situation; that he refused to comply with the handcuff order, and that thereafter all four officers were involved in bringing plaintiff into compliance with the cuff up order, with both Murphy and Lytle declaring that they were the two involved in securing plaintiff's legs. Defendant Lytle states that he "specifically recall[ed] grabbing Brownlee's right leg and pulling it back towards his buttock area, in an attempt to make him lose his balance so that he would comply." Plaintiff's 10/22/07 affidavit in Opp., attaching Murphy and Lytle declarations, signed on 4/04/05.

   Plaintiff has repeatedly asserted that he got up to move to the C-section door, 8-block door when he was told to and the control door would not open for him to enter that section,

5

has admitted that he said at the time there was something wrong with what went on in the fracas involving the inmates and two of the defendants, and that he was rushed by the four defendants as soon as the handcuff order was made, pressed into a wall and his right leg pulled up until he experienced a sharp pain. See, e.g. the portion of plaintiff's 6/02/04 deposition included as an exhibit to the DUF in support of MSJ2.

Defendants base their argument for summary judgment on the principle, once a constitutional violation has been made out, that in determining whether or not the right is clearly established, the inquiry is specific to the circumstances faced by defendants and that plaintiff's having resisted being handcuffed should not preclude summary judgment. MSJ2, pp. 5-6. Saucier does note a "further dimension" with regard to the immunity question, which permits "reasonable mistakes...as to legal constraints on particular police conduct." 533 U.S. at 205, 121 S. Ct. at 2158. "Excessive force claims...are evaluated for objective unreasonableness based upon the information the officers had when the conduct occurred." Id. at 207, 121 S. Ct. at 2159; see also, Fogel v. Collins, 531 F.3d 824, 833 (9th Cir. 2008) ("The standard for qualified immunity is objective. An officer's subjective understanding of the constitutionality of his or her conduct is irrelevant.") Citing Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987) and Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865(1989), the Supreme Court in Saucier, at 199-200, 12 S. Ct. at 2155, was at pains to establish that a finding that a second step of the qualified immunity inquiry in the (Fourth Amendment) excessive force claim context was not identical to the merits of the claim and that the second prong "must be considered on a more specific level....":

> Because "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation," *id*., at 397, 109 S.Ct. 1865, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective, *id.*, at 396, 109 S.Ct. 1865. We set out a test that cautioned against the "20/20 vision of hindsight" in favor of deference to the judgment of reasonable officers on the scene. *Id.*, at 393, 396, 109 S.Ct. 1865. *Graham* sets forth a list of

1
2
3
4
5

> factors relevant to the merits of the constitutional excessive force claim, "requir [ing] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, at 396, 109 S.Ct. 1865. If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.

Saucier, at 205, 12 S. Ct. at 2158.

The problem for defendants is that on this motion, despite their argument that plaintiff was standing and within steps of the officers during a volatile situation and that the officers could have reasonably believed that plaintiff constituted a threat in the circumstances (MSJ2, p. 6, DUF 2, 12-15), it is plaintiff's version of the facts that are to be assessed for the reasonableness of defendants' conduct.  The Ninth Circuit having found that a genuine issue of material fact has been raised as to whether the force these defendants applied to plaintiff's leg and back "was either necessary or excessive under Hudson v. McMillian, 503 U.S. 1 (1992),"[4] these defendants cannot make a showing on this motion that the particular circumstances of this case constitute one of those exceptional situations where the officers could have somehow reasonably believed that engaging in excessive force was lawful.

The question on remand answers itself.  When the constitutional violation is excessive force in violation of the Eighth Amendment, qualified immunity is an unavailable defense because the use of malicious and sadistic force to cause harm is *ipso facto* a clear violation of the Constitution and Supreme Court precedent.   In Jeffers v. Gomez, 267 F3d 895 (9th Cir. 2001), the court held that in order for plaintiff to state a claim on an Eighth Amendment excessive force in the first instance [as opposed to a Fourth Amendment excessive force claim based on objective reasonableness], the standard to be met in determining the existence of a constitutional violation was "'malicious[ ] and sadistic[ ] for the very purpose of causing harm.'"

---

[4] Ninth Circuit Opinion on reverse/remand, p. 2.

7

Id. at 910.  It followed that in order to meet that standard, "[plaintiff] must ' "put forward specific, nonconclusory factual allegations'" that establish improper motive causing cognizable injury.'"  Id. at 911.  In the case of Jeffers, and as the undersigned thought here, plaintiff had not made that burden as matter of law.  However, because the law of this case is that plaintiff has satisfied that burden on summary judgment, at least with respect to raising a material issue of fact, it is impossible to ever state under the present circumstances, as a matter of law, that the involved correctional officers may have been reasonably mistaken in their belief that engaging in *Eighth Amendment* excessive force, maliciously and sadistically, was not a violation of clearly established law.  See Roberts v. Meecham, 60 F.3d 1436 (9th Cir. 1995).  One simply cannot act maliciously, sadistically, but be reasonably mistaken as to whether the law precluded such conduct at the same time.  If the law would find otherwise, it would be "an ass, an idiot."[5]

Due Process

After remand, the court sought further briefing as to how plaintiff's due process claim does not *necessarily* challenge the fact or duration of confinement.  On 7/09/07, plaintiff filed a document entitled "supplemental briefing,"  wherein plaintiff acknowledges that while the prison disciplinary action resulted in good time credit loss, his complaint for money damages was based on his confinement in Administrative Segregation in violation of the Fourteenth Amendment's due process clause, not the revocation of good time credits.  Plaintiff cites Ramirez v. Galaza, 334 F.3d 850, 853 (9th Cir. 2003), in support of his assertion that he may bring a claim related to his segregated confinement in a § 1983 action and also relies on Peralta v. Vasquez, 467 F.3d 98 (2nd Cir. 2006).  In Peralta, at 104, the Second Circuit came to a somewhat tortured holding by way of rather convoluted reasoning, determining that, where a

---

[5] "' It was all Mrs. Bumble.  She would do it,' urged Mr. Bumble, first looking round to ascertain that his partner had left the room."' That is no excuse,' replied Mr. Brownlow. "'You were present on the occasion of the destruction of these trinkets, and, indeed, are the more guilty of the two, in the eye of the law; for the law supposes that your wife acts under your direction.'"  "'If the law supposes that,' said Mr. Bumble, squeezing his hat emphatically in both hands, 'the law is a ass a idiot.'"  C. Dickens, *The Adventures of Oliver Twist*, c. LI.

8

prisoner has been subject to sanctions arising from disciplinary proceedings impacting both his duration of confinement and his conditions of confinement:

> a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement*. In other words, the prisoner must abandon, not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in his current § 1983 suit.

[Emphasis in original].

In Ramirez, 334 F.3d at 858, the Ninth Circuit held "that the favorable termination rule does not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement." In doing so, the Ninth Circuit declared itself in accord with its holding in Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997) because "Neal accords with our holding here that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." The court went on to determine that Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584, was not undermined because Ramirez' challenge to the procedures implemented at the hearing because a successful challenge would not necessarily shorten his term of confinement because the state had not shown that the expungement of disciplinary conviction that Ramirez sought would be likely to accelerate his parole eligibility. Ramirez, at 859.

This court confesses to some confusion in the reasoning of the Ramirez Court:

> nothing in *Preiser*, *Heck*, or *Edwards* holds that prisoners challenging the conditions of their confinement are automatically barred from bringing suit under § 1983 without first obtaining a writ of habeas corpus. Rather, the applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement.

Ramirez, at 856.

1    It appears, on the face of it, to be counter-intuitive that an inmate could obtain
2 money damages arising from a successful due process challenge to a prison disciplinary
3 conviction without necessarily implicating the validity of the conviction which resulted in, inter
4 alia, a loss of time credits. See Young v. Kenny, 907 F.2d 874, 876-877 (9th Cir. 1989).[6] In any
5 event, what plaintiff fails to do in his supplemental briefing is to identify precisely what due
6 process violations occurred at precisely which disciplinary proceedings. As the undersigned
7 noted in the 6/21/07 Order in footnote 3:

> The review of the undersigned of the record of this due process
> claim, for money damages only, reveals that this claim was
> originally dismissed, pursuant to Heck, supra, and Edwards v.
> Balisok, 520 U.S. 641, 117 S. Ct. 1584 (1997), with leave to
> amend in a screening order, filed on April 18, 2002. Plaintiff opted
> not to amend this claim by filing an amended complaint and,
> thereafter, the court filed Findings and Recommendations, on June
> 12, 2002, recommending dismissal of the claim. Once again,
> plaintiff did not act to revive the claim, filing no objections, after
> which the Order adopting the findings and recommendations was
> filed on August 28, 2002.

In reviewing the original complaint from which the due process claims were previously dismissed, plaintiff alleges rather vaguely that his due process rights were violated by his "confinement in segregation." Complaint, p. 3. Plaintiff alleges that (former) defendants Lacy, Montel, K. M. Chastain, Mini, Shoremaker denied him due process in connection with a CDC 114D hearing. Id. He claims that at that 114D hearing on 1/25/01, he, a black inmate, was asked by Warden Chastain why he would help "some white boys." Id. at 10. Plaintiff is unclear but this is evidently a reference to the incident in the rotunda which involved the two white inmates. Plaintiff explained that the two inmates "were being done wrong...", and that that is what he had told staff at the time of the incident. Id. Warden Chastain sent plaintiff back to "C" yard, telling plaintiff to wait and see how the CDC 115 "plays out." Id. Plaintiff then sent in an appeal, the contents of which he does not describe, on 1/27/01, which was returned with word

---

[6] It appears now that Edwards would never bar an attack on a prison disciplinary unless the direct remedy sought was a reduction of sentence time (reinstatement of benefits).

that if he did not drop the undescribed appeal, he would be going to "the hole." Id. Plaintiff refiled the appeal on 2/25/01, but does not set forth what occurred thereafter. Id. Plaintiff reiterates that his due process claim goes to the actions of Lacy, Montel, K. M. Chastain, Mini, Shoremaker on 1/25/01 for refusing to overturn his disciplinary conviction. Id. at 12. He contends that an N. Hayward "sat in judgment of her own complaint in proceedings against plaintiff" and that his due process rights were violated "when she let untrue testimony go uncorrected." Complaint, p. 15.

Plaintiff never clarifies in the original complaint or the recently submitted supplemental briefing how he has adequately alleged a due process violation at a disciplinary hearing, nor does he even clarify which hearing resulted in his confinement in ad seg or for how long.

> Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S.Ct. 2963, 2978-79, 41 L.Ed.2d 935 (1974). The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals. Id. at 566, 94 S.Ct. at 2979.

Zimmerlee v. Keeney, 831 F2d 183, 186 (9th Cir. 1987).

The court is further puzzled concerning whether a liberty interest is implicated at all here given in a prison's mere assignment of a prisoner to administrative segregation, since that is all that is involved here absent a claim of time credit take away (which, if present, would then make it necessary to proceed by way of habeas). Plaintiff did not allege any particular condition in administrative segregation which the law would determine to be atypical and harsh in the Sandin context. For this reason alone, the complaint again fails to allege a due process violation. Ramirez itself makes clear that plaintiff states no due process violation to the extent that he is averring that he was deprived of due process in the manner of the processing of his appeals. 334 F.3d at 860, citing Sandin v. Conner, 515 U.S. 472, 483-84, 115 S.Ct. 2293 (1995).

However, where "most significantly" Ramirez alleged confinement in administrative segregation for two years, the Ninth Circuit remanded the case for the district court for application of the <u>Sandin</u> factors:

> a prisoner may challenge a state action which does not restrain a protected liberty interest, but which nonetheless imposes some "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484, 115 S.Ct. 2293; <u>Keenan v. Hall</u>, 83 F.3d 1083, 1088 (9th Cir.1996). If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process. <u>Sandin</u>, 515 U.S. at 484, 115 S.Ct. 2293; <u>Keenan</u>, 83 F.3d at 1089.
>
> There is no single standard for determining whether a prison hardship is atypical and significant, and the "condition or combination of conditions or factors ... requires case by case, fact by fact consideration." <u>Keenan</u>, 83 F.3d at 1089. Three guideposts cited in <u>Sandin</u>'s analysis, however, provide a helpful framework: 1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence. <u>Sandin</u>, 515 U.S. at 486-87, 115 S.Ct. 2293; <u>Keenan</u>, 83 F.3d at 1089.

<u>Ramirez</u>, at 860-861.

Plaintiff has failed to set forth altogether allegations to frame a due process violation, in failing to identify what it was about administrative segregation which made it atypical and harsh, in what manner his due process rights were violated, which proceeding resulted in his administrative segregation, or even the length of time of that confinement. Therefore, the court once again recommends dismissal of plaintiff's due process claims.

Accordingly, IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment, filed on 10/09/07, be denied;

2. Plaintiff's reinstated due process claims be dismissed; and

3. Within thirty days of adoption of these findings and recommendations, should that occur, this case be set for trial on plaintiff's allegations of excessive force in violation of the

1  Eighth Amendment against defendants Murphy, Snyder, Lytle and Prado.

2        These findings and recommendations are submitted to the United States District

3  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

4  days after being served with these findings and recommendations, any party may file written

5  objections with the court and serve a copy on all parties.  Such a document should be captioned

6  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

7  shall be served and filed within ten days after service of the objections.  The parties are advised

8  that failure to file objections within the specified time may waive the right to appeal the District

9  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

10 DATED: 08/15/08

                                                /s/ Gregory G. Hollows
                                                _____
                                                GREGORY G. HOLLOWS
                                                UNITED STATES MAGISTRATE JUDGE

13 GGH:009
   brow0214.msj2